UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SEAN WILLIAMS,

          Plaintiff,

                   9:10-CV-0245
      v.             (MAD/GHL)

E. RAIMO, *et al.*,

          Defendants.
_____

APPEARANCES:                OF COUNSEL:

SEAN WILLIAMS, 02-A-0508
Plaintiff, *pro se*
Attica Correctional Facility
Box 149
Attica, New York 14011

HON. ERIC T. SCHNEIDERMAN        ROGER W. KINSEY, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, New York 12224

GEORGE H. LOWE, United States Magistrate Judge

## **REPORT-RECOMMENDATION AND ORDER**

   This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Mae A. D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Generally, Plaintiff Sean Williams alleges that Defendants Correctional Officer E. Raimo, Correctional Officer J. Smith, and Sergeant T. Vedder utilized excessive force in violation of Plaintiff's constitutional rights.  Plaintiff also alleges that Defendant Vedder failed to stop Defendants Raimo and Smith from utilizing excessive force.  Plaintiff further alleges that Defendant Nurse J. Oliver exhibited deliberate indifference to his serious medical needs.

Currently pending before the Court is Defendant Oliver's motion for summary judgment pursuant to Fed. R. Civ. P. 56. Dkt. No. 31. Plaintiff opposes the motion and has filed a cross-motion for summary judgment. Dkt. Nos. 34, 43. Defendants oppose the cross-motion. Dkt. Nos. 46-49.

## I.    BACKGROUND

### A.    Summary of the Complaint

Plaintiff alleges the following: On August 22, 2009, Plaintiff was involved in an altercation with another inmate at Great Meadow Correctional Facility. Dkt. No. 1. During the altercation, Defendants Smith and Raimo responded. *Id.* at ¶ 1. They slammed Plaintiff into a "tier," punched him, and handcuffed him. *Id.* at ¶¶ 1-3. Once he was handcuffed, Defendants Smith and Raimo kicked Plaintiff while he was on the ground for "several minutes." *Id.* at ¶ 3. Defendants Smith and Raimo pulled Plaintiff to his feet and slammed him into gates. *Id.* at ¶¶ 3-4. Defendant Smith punched Plaintiff in the shoulder, arm, and back. *Id.* at ¶ 4. Defendant Raimo kneed Plaintiff and pushed Plaintiff's head into "the bars." *Id.* at ¶ 5. Defendant Vedder failed to stop the "attack" and hit Plaintiff in the head and back. *Id.* at ¶ 6.

Plaintiff was escorted to the infirmary. Dkt. No. 1 at ¶ 7. Defendant Oliver interviewed Plaintiff and provided nothing for the swelling and pain. *Id.* at ¶ 8. Plaintiff requested an "emergency sick call" the next day, but Defendant Oliver refused to provide medical assistance. *Id.* at ¶ 9.

### B.    Summary of Grounds in Support of Defendant Oliver's Motion

Defendant Oliver argues that Plaintiff cannot prevail on his Eighth Amendment claim because Plaintiff had no serious medical need and because she exhibited no indifference. Dkt. No.

31-1. Defendant Oliver also argues that she is entitled to qualified immunity. *Id.*

### C. Summary of Plaintiff's Response to Defendant Oliver's Motion and Plaintiff's Cross-Motion for Summary Judgment

In response to Defendant Oliver's motion, Plaintiff argues that he had a serious medical need and that Defendant Oliver acted with deliberate indifference. Dkt. No. 34, 43. Plaintiff also argues that Defendant Oliver should not be granted qualified immunity. *Id.*

In his cross-motion for summary judgment, Plaintiff argues that summary judgment should be granted because Defendants Raimo, Smith, and Vedder utilized excessive force and Defendant Vedder failed to intervene. Dkt. Nos. 34-1, 34-2, 34-3, 43.

### D. Summary of Defendants' Response to Plaintiff's Cross-Motion

Defendants reiterate that there was no Eighth Amendment medical violation. Dkt. No. 47 at 2-5. Defendants also argue that summary judgment is unavailable as to Defendants Raimo, Smith, and Vedder because questions of fact exist with regard to the force used to restrain Plaintiff. *Id.* at 5-7.

## II. LEGAL STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, summary judgment is warranted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).

The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material[1] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino*, 542 F.3d 290, 309 (2d Cir. 2008).

**III.   ANALYSIS**

    **A.   Defendant Oliver's Motion for Summary Judgment**

        **1.   Deliberate Indifference**

Plaintiff alleges that Defendant Oliver acted with deliberate indifference in violation of his Eighth Amendment rights by failing to provide adequate medical attention to Plaintiff's injuries on the day of the incident and the following day. Dkt. No. 1. Plaintiff also alleges that Defendant Oliver falsified medical records in order to "cover her tracks." Dkt. No. 34 at ¶ 4.

As noted, Defendant Oliver argues that there was no Eighth Amendment violation because Plaintiff did not have a serious medical need and because she exhibited no indifference. Dkt. No. 31-1.

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishment. The word "punishment" refers not only to deprivations imposed as a sanction for

---

[1]    A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.

criminal wrongdoing, but also to deprivations suffered during imprisonment. *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain or if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle*, 429 U.S. at 102. Thus, the Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In fulfilling this duty, prison officials must ensure, among other things, that inmates receive adequate medical care. *Id.* (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

There are two elements to a prisoner's claim that prison officials violated his Eighth Amendment right to receive medical care: "the plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (citation and punctuation omitted). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).

### a.   Serious Medical Need

" 'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). Although there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the

medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Brock v. Wright*, 315 F.3d 158, 162-63 (2d Cir. 2003) (citing *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). An inmate need not "demonstrate that he or she experiences pain that is at the limit of human ability to bear, nor do[es] [this Court] require a showing that his or her condition will degenerate into a life threatening one." *Id.* at 163. This "'component of an Eighth Amendment claim is . . . [necessarily] contextual' and fact-specific." *Smith*, 316 F.3d at 185 (quoting *Hudson*, 503 U.S. at 8). Thus, the "serious medical need inquiry must be tailored to the specific circumstances of each case." *Id.*

Plaintiff alleges that as a result of actions taken by Defendants Raimo, Smith, and Vedder, he experienced "severe pain" and swelling of the leg, knee, and shoulder. Dkt. No. 1. Plaintiff also alleges that he had "absolutely no movement" in his right leg. Dkt. No. 34 at ¶ 2. Plaintiff further alleges that he now experiences chronic pain, takes "strong pain medication," and is scheduled to receive physical therapy. *Id.* at ¶ 3. Plaintiff also states that he wears a knee brace and walks with a limp. *Id.*

Defendant Oliver's notes reflect that Plaintiff's left anterior shoulder showed swelling, bruising, and limited range-of-motion. Oliver Dec. (Dkt. No. 31-3), Exs. A, C. The area above Plaintiff's right knee showed swelling and limited range-of-motion. *Id.* Plaintiff's right wrist showed limited range-of-motion. *Id.* Plaintiff complained of "head pain." Oliver Dec., Ex. A. Her notes also reflect that ice and Motrin were ordered. *Id.*, Exs. A, C.

Subsequently, Plaintiff was seen by other medical personnel for treatment of his left shoulder and right knee. Oliver Dec., Ex. E. Plaintiff's left shoulder and right knee were x-rayed and an MRI of his right knee was performed. Oliver Dec., Exs. D, E. The x-rays were negative.

Oliver Dec., Ex. E at 4. The MRI showed a discoid lateral meniscus.[2] Plaintiff's Ex. E (Dkt. No. 34-3). Plaintiff was prescribed Ibuprofen and Tylenol. Oliver Dec., Exs. D, E.

Based on the circumstances of this case, I find that Plaintiff has raised a genuine issue of material fact as to whether his alleged "severe pain" and injuries, in combination, constituted a serious medical need. *See Guarneri v. Bates*, No. 9:05-CV-444, 2008 WL 686809, at *6 (N.D.N.Y. Mar. 10, 2008) (Sharpe, D.J., accepting and adopting Report-Recommendation of Homer, M.J.) (finding sufficient issues of material fact concerning the actual pain and severity of the alleged shoulder injury and noting that cases suggest that allegations of severe pain and reduced mobility in the shoulder are sufficient to raise a material issue of fact as to a serious medical need) (citation omitted); *Douglas v. Smith*, No. 9:05-CV-1000, 2008 WL 434605, at *7 (N.D.N.Y. Feb. 14, 2008) (Kahn, J., approving and adopting Report-Recommendation of Homer, M.J.) (finding that lacerations, bruises, swelling, and temporary hearing loss when considered in combination may be sufficiently serious); *Moss v. Nesmith*, No. 9:05-CV-1585, 2008 WL 413297, at * 5 (N.D.N.Y. Feb. 13, 2008) (Mordue, C.J., approving Report-Recommendation of Homer, M.J.) (finding that the plaintiff "may have offered enough evidence to demonstrate that the knee and rib injuries he sustained were serious" where the plaintiff alleged, *inter alia*, that he suffered pain and swelling in the knee following an injury); *Benjamin v. Galeno*, 415 F. Supp. 2d 254, 259 (S.D.N.Y. 2005) (finding that when a "*pro se* plaintiff alleges that his shoulder caused him extreme pain during the period he says defendants failed to treat his injury, he has effectively raised a disputed issue of fact,

---

[2] A discoid lateral meniscus is a semilunar lateral meniscus of the knee that has been transformed into a thickened, irregular discoid mass as a result of excess motion of the meniscus, which in turn results from congenital absence of attachment of the posterior horn of the meniscus to the tibial plateau. The excess motion also causes a clicking sound on flexion and extension of the knee. *Dorland's Illustrated Medical Dictionary* 1127 (30th ed. 2003).

7

albeit a tenuous one, as to the objective prong-whether he labored under a serious medical condition"), *aff'd Benjamin v. Koeningsmann*, 204 Fed App'x 979 (2d Cir. 2006); *Linden v. Westchester County*, No. 93 Civ. 8373, 1995 WL 686742, at *3 (S.D.N.Y. Nov. 20, 1995) (finding that the plaintiff alleged a serious medical need where he sustained cuts, bruises, and pain during an altercation with a correctional officer).[3]

### b.     Deliberate Indifference

With regard to the second element, deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." *Chance*, 143 F.3d at 702. Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment was adequate. *Chance*, 143 F.3d at 703. Thus, "disagreements over medications, diagnostic techniques (*e.g.*, the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

### i.     August 22, 2009 (The Day of The Incident)

Defendant Oliver's notes reflect that she examined Plaintiff and determined the extent of his injuries (Oliver Dec., Ex. C), and these injuries, I have found above, raise a genuine issue of material fact as to whether he had a serious medical need. It follows, therefore, since Defendant Oliver knew of the extent of his injuries, that there is a genuine issue of material fact as to whether

---

[3] There, the plaintiff alleged that the defendant beat the plaintiff around the head and face, knocked him to the floor, held plaintiff to the floor by sitting on him, twisted plaintiff's arms behind him, grabbed plaintiff's hair, and permitted another inmate to kick and punch plaintiff.

she knew that he had a serious medical need.

As to whether she disregarded that serious medical need, her notes reflect that ice and Motrin were ordered (*Id.*), and she states in her sworn declaration that "Plaintiff was given ice for the swelling and ibuprofen for pain and stiffness." Oliver Dec. at ¶ 7. However, Plaintiff asserts, both in his sworn Complaint and in his response to Defendants' "Statement Pursuant to Local Rule 7.1(a)(3)," that he was given nothing for his pain and swelling. Dkt. No. 1 at ¶ 8, Dkt. No. 34 at ¶ 2.

In addition, Plaintiff also asserts, in his response to the claim in Defendants' statement of material facts that he "was given ice for the swelling and ibuprofen for pain and stiffness" (Dkt. No. 31-2, at 2, ¶6), that "[t]he entire interview by J. Oliver . . . was all 'video recorded.' " Dkt. No. 34, at ¶ 2. The Court has viewed this video recording, which concludes with Defendant Oliver stating "I'm done." If Plaintiff had been provided with ice and/or medication during the period that was video taped, this would have been reflected on the tape. It is not. The Court is aware, of course, that Defendant Oliver might have provided Plaintiff with ice and medication after she conducted her video-taped examination of him. Indeed, this would be logical - prior to examining him how would she know what medications or other treatment aids to bring with her to the examination room? However, the record before the Court is silent in this regard. Therefore I find that there is a genuine issue of material fact as to whether Defendant Oliver disregarded Plaintiff's serious medical need.

### ii.   August 23, 2009 (The Day Following The Incident)

Plaintiff also alleges that Defendant Oliver refused to provide treatment to him on the day following the incident despite knowing that he was injured and in pain. Dkt. No. 34 at ¶ 4. He alleges that she was aware of the seriousness of his injuries based on her examination of him the previous day and alleges that she knew that he was in keeplock and unable to come to an emergency

9

sick call on his own. *Id.* at ¶¶ 4, 8. He claims that Defendant Oliver never visited Plaintiff or ascertained why Plaintiff failed to appear for the emergency sick call. *Id.* at ¶ 4. He states that her refusal to provide treatment resulted in Plaintiff experiencing "more pain." *Id.* at ¶ 10.

Defendant Oliver's note dated August 23, 2009, states that Plaintiff complained of a swollen leg and requested an emergency sick call, but "never showed up." Oliver Dec., Ex. C.

Where a plaintiff's claim is based on a delay in medical treatment, the plaintiff must show that "substantial harm" resulted from the delay itself. *Bennett v. Erie County Holding Center Med. Dep't*, No. 03-CV-6393, 2006 WL 897817, at *8 (W.D.N.Y. Mar. 31, 2006) (citing *Evans v. Manos*, 336 F. Supp. 2d 255, 262 (W.D.N.Y. 2004)). Here, there is no evidence in the record suggesting that Plaintiff was substantially harmed by his not seeing Defendant Oliver on August 23, 2009. In fact, when Plaintiff saw medical personnel on the following day, August 24, 2009, Plaintiff's right knee showed only "slight" swelling and no ice or medications were ordered. Oliver Dec., Ex. E at 1. Accordingly, Plaintiff has failed to show that substantial harm resulted from the one-day delay in treatment. *See Croft v. Hampton*, No. 06-3838, 2008 WL 2744332, at *4-5 (8th Cir. July 15, 2008) (holding that delaying treatment of prisoner's injury over the weekend to the next business day was not deliberate indifference where prisoner "submitted no medical evidence showing any negative effect of the delay"); *Bennett*, 2006 WL 987817, at *8; Evans, 336 F. Supp. 2d at 262; *see also* Harrison, 219 F.3d at 138).

Therefore, I find no genuine issue of material fact showing that Defendant Oliver was deliberately indifferent on the day following the incident. Accordingly, I recommend that Defendant Oliver's motion for summary judgment dismissing this aspect of Plaintiff's Eighth Amendment claim be granted.

### 2. Qualified Immunity

Defendant Oliver argues that she is entitled to qualified immunity. Dkt. No. 31-1 at 4-6. The affirmative defense of qualified immunity "shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Stephenson v. Doe*, 332 F.3d 68, 76 (2d Cir. 2003) (quoting *McCardle v. Haddad*, 131 F.3d 43, 50 (2d Cir.1997)).

A qualified immunity inquiry in prisoner civil rights cases generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff, establish a constitutional violation"; and (2) "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Sira v. Morton*, 380 F.3d 57, 68–69 (2d Cir. 2004) (citations omitted); *accord*, *Higazy v. Templeton*, 505 F.3d 161, 169 n. 8 (2d Cir. 2007) (citations omitted). The right to be free from deliberate indifference to serious medical needs is a clearly established constitutional right. *LaBounty v. Coughlin*, 137 F.3d 68, 74 (2d Cir. 1998) (citing *Estelle*, 429 U.S. at 104). Whether particular acts are objectively reasonable, however, is a highly fact-specific inquiry. *See Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir. 1991). Thus, the defense is unavailable and summary judgment is inappropriate where "the objective reasonableness of defendants' actions turns on disputed questions of fact." *Id.* at 927. To establish the qualified immunity defense, defendants "must show that it was 'objectively reasonable' . . . for them to believe that they had not acted with the requisite deliberate indifference." *McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004) (quoting *Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003)).

Here, there are genuine issues of material fact as to whether Plaintiff had a serious medical need and, if so, whether Defendant Oliver disregarded that need on the day of the incident.

11

Therefore, I recommend that Defendant Oliver's motion for summary judgment on qualified immunity grounds be denied. *See Anderson v. Kooi*, No. 9:07-CV-1257, 2011 WL 1256942, at *1 (N.D.N.Y. Apr. 1, 2011) (Hurd, J.) (adopting Report-Recommendation of Lowe, M.J.,[4] and denying motion for summary judgment on qualified immunity grounds where there were genuine issues of material facts as to whether defendants were deliberately indifferent to a potentially serious medical need).[5]

### B.  Plaintiff's Cross-Motion for Summary Judgment

Plaintiff moves for summary judgment against Defendants Raimo, Smith, and Vedder. Dkt. No. 34-1, 34-2, 34-3. Plaintiff argues that these Defendants utilized excessive force and that Defendant Vedder failed to intervene to stop the others from "assault[ing]" Plaintiff. *Id.*

Defendants Raimo, Smith, and Vedder deny these allegations. Dkt Nos. 12, 47, 48. They argue that summary judgment should be denied because, *inter alia*, "multiple questions of fact exist as to the amount of force used, when it was used, the [D]efendants' perception of the force necessary and [D]efendants' mental state." Dkt. No. 47 at 6-7. They also argue that Plaintiff "has questioned the veracity of documents, testimony and reports, which are clearly questions of fact." *Id.* at 7.

#### 1.  Excessive Force

Inmates enjoy an Eighth Amendment protection against the use of excessive force and may

---

[4] *Anderson v. Kooi*, No. 9:07-CV-1257, 2011 WL 1315721, at *14 (N.D.N.Y. Jan. 24, 2011).

[5] The Court need not address qualified immunity with respect to Plaintiff's claim against Defendant Oliver regarding the day following the incident because, as discussed, he has not established that she violated his constitutional rights on this day.

12

recover damages for its violation under § 1983. *Hudson v. McMillian*, 503 U.S. 1, 9-10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000). To bring a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements. *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999).

The objective element is "responsive to contemporary standards of decency" and requires a showing that "the injury actually inflicted is sufficiently serious to warrant Eighth Amendment protection." *Hudson*, 503 U.S. at 9 (internal citations omitted); *Blyden*, 186 F.3d at 262. However, "the malicious use of force to cause harm constitute[s][an] Eighth Amendment violation per se" regardless of the seriousness of the injuries. *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (citations omitted). " 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.' " *Sims*, 230 F.3d at 22 (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." *Id.* at 21 (citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (quoting *Hudson*, 503 U.S. at 7). In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: "the extent of the injury and the mental state of the defendant[;] ...

13

the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted).

Plaintiff alleges that Defendants Raimo, Smith, and Vedder acted with "malicious and sadistic intent" and recklessly attacked Plaintiff. Dkt. No. 34-2 at ¶¶ 2, 6. In contrast, Defendants Raimo, Smith, and Vedder argue that force was necessary due to Plaintiff's resistance. Dkt. No. 47 at 4-5 (citing Dkt. No. 48, Exs. A-E). "The rule in determining whether to grant summary judgment is that credibility determinations, weighing evidence, and drawing inferences are functions for the jury, not the court." *Jordan v. Fischer*, No. 9:08-CV-1294, 2011 WL 673781, at *10 (N.D.N.Y. Feb. 17, 2011) (citing *Blake v. Race*, 487 F. Supp. 2d 187, 202 (E.D.N.Y. 2007) (citing *Anderson v. Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. 2505)). Here, Plaintiff's excessive force claim will turn on issues of credibility that the court cannot determine on a motion for summary judgment. Therefore, summary judgment for Plaintiff is inappropriate with regard to the excessive force claim. *See Jordan*, 2011 WL 673781, at *11 (citing *Griffin v. Crippen*, 193 F.3d 89, 90–92 (2d Cir. 1999) (although plaintiff could offer only his own testimony and evidence of a bruised shin and a swollen left knee in support of his excessive force claim, dismissal was inappropriate because there were genuine issues of material fact concerning whether correction officers, whom plaintiff admittedly assaulted, maliciously used force against him after he was subdued and handcuffed); *Sims v. Artuz*, 103 Fed. App'x 434, 437 (2d Cir. 2004) (plaintiff's allegations that he was kicked and punched while being removed from his cell after causing a disruption, corroborated in part by documented minor injuries were sufficient to withstand a summary judgement motion); *Dallio v. Santamore*,

9:06-CV-1154 (GTS/DRH), 2010 WL 125774, at *9 (N.D.N.Y. Jan. 7, 2010) (because the court should not weigh the evidence or make credibility determinations, summary judgment should be denied where the plaintiff alleged that he was repeatedly kicked and punched after he was subdued and restrained by correction officers, notwithstanding the relatively minor injuries the plaintiff suffered and the substantial contrary evidence proffered by the defendants); *Cicio v. Lamora*, 9:08-CV-431 (GLS/DEP), 2010 WL 1063875, at *7-8 (N.D.N.Y. Feb. 24, 2010) (denying summary judgment on the plaintiff's claim that defendant correction officer hit inmate several times after he was subdued and helpless, despite "seemingly overwhelming" contradictory evidence, including the fact that the plaintiff suffered only a minor bruise)). Accordingly, I recommend that this portion of Plaintiff's cross-motion be denied.

### 2. Failure to Intervene

Plaintiff also alleges that Defendant Vedder failed to stop the other officers from "attack[ing]" him. Dkt. No. 1 at ¶ 6. In *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003), the court held that an officer may be personally involved in the use of excessive force if he either directly participates in the assault or if he was present during the assault, yet failed to intervene on behalf of the victim, even though the officer had a reasonable opportunity to do so. An officer's failure to intervene during another officer's use of excessive force can itself constitute an Eighth Amendment violation, unless the assault is "sudden and brief," and the defendant had no real opportunity to prevent it. *See Cusamano v. Sobek*, 604 F. Supp. 2d 416, 428–29 (N.D.N.Y. 2009) (citing cases).

I have already determined that questions of material fact exist with respect to whether excessive force was utilized. Therefore, I find that a question of fact precludes summary judgment

with regard to Plaintiff's failure to intervene claim. Accordingly, I recommend that this portion of Plaintiff's cross-motion be denied. *See Cicio v. Lamora*, 2010 WL 1063875, at *9 (same).

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendant Oliver's motion for summary judgment (Dkt. No. 31) be GRANTED with respect to Plaintiff's claim that Defendant Oliver acted with deliberate indifference on the day following the incident (August 23, 2009), and that the motion be DENIED in all other respects; and it is further

**RECOMMENDED** that Plaintiff's cross-motion for summary judgment (Dkt. No. 34) be DENIED; and it is further

**ORDERED**, that the Clerk serve copies of the electronically-available-only decisions cited herein on Plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: July 22, 2011
      Syracuse, New York

                                              George H. Lowe
                                              United States Magistrate Judge