**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SEAN WILLIAMS,**

                               **Plaintiff,**

    vs.                                                            **9:10-cv-245**
                                                                     **(MAD/GHL)**

**E. RAIMO, Correctional Officer, Great Meadow
Correctional Facility; J. SMITH, Correctional
Officer, Great Meadow Correctional Facility; T.
VEDDER, Correctional Sergeant, Great Meadow
Correctional Facility; and J. OLIVER, Nurse,
Great Meadow Correctional Facility,**

                               **Defendants.**
_____

**APPEARANCES:**                                 **OF COUNSEL:**

SEAN WILLIAMS, Pro Se
02-A-0508
Shawangunk Correctional Facility
P.O. Box 700
Wallkill, NY 12589


**OFFICE OF THE NEW YORK**         **ROGER W. KINSEY, AAG**
**STATE ATTORNEY GENERAL**        **LAURA A. SPRAGUE, AAG**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff *pro se*, an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), commenced this action pursuant to 42 U.S.C. § 1983, alleging that Defendants Raimo, Smith, and Vedder used excessive force in violation of his constitutional rights. *See* Dkt. No. 1. Plaintiff also alleges that Defendant Vedder

failed to stop Defendants Raimo and Smith from using excessive force and that Defendant Oliver was deliberately indifferent to his serious medical needs.

Currently before the Court are Plaintiff's and Defendants' motions *in limine*.

## II. BACKGROUND

The Court assumes the parties' familiarity with the facts of this case and refers them to the Court's December 2, 2011 Memorandum-Decision and Order granting in part and denying in part Defendants' motion for summary judgment for a complete recitation of the relevant facts. *See* Dkt. No. 54

## III. DISCUSSION

**A.     Standard of review**

The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *see also Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). A court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds. *See Baxter Diagnostics, Inc. v. Novatek Med., Inc.*, No. 94-cv-5220, 1998 WL 665138, *3 (S.D.N.Y. Sept. 25, 1998). Courts considering a motion *in limine* may reserve decision until trial so that the motion is placed in the appropriate factual context. *See Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Group*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996). Alternatively, the court is "free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling" at trial as "the case unfolds, particularly if the actual testimony differs from what was contained in the [movant's] proffer." *Luce*, 469 U.S. at 41-42.

**B.     Defendants' motion to preclude Plaintiff from introducing evidence of causation**

Defendants seek to preclude Plaintiff from offering evidence of causation of his alleged injuries at trial, "as this type of proof requires testimony from an expert." *See* Dkt. No. 74-1 at 3. Specifically, Defendants argue that, since Plaintiff has failed to disclose any experts in this case in accordance with the Federal Rules of Civil Procedure, he should be precluded from presenting causation evidence at trial. *See id.* Plaintiff contends, however, that because he complains of pain and injuries resulting from excessive force, no expert testimony is required. *See* Dkt. No. 94 at 2-3.

To bring a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements. *See Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999). The objective element is "responsive to contemporary standards of decency" and requires a showing that "the injury actually inflicted is sufficiently serious to warrant Eighth Amendment protection." *Hudson*, 503 U.S. at 9 (internal citations omitted); *Blyden*, 186 F.3d at 262. However, "the malicious use of force to cause harm constitute[s] [an] Eighth Amendment violation *per se*" regardless of the seriousness of the injuries. *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9); *see also Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010) ("The 'core judicial inquiry' . . . was not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm'" (quotation omitted)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (citations omitted). "'Not every push or shove, even if it

3

may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" *Sims*, 230 F.3d at 22 (citation omitted).

The subjective element requires a plaintiff to demonstrate a "necessary level of culpability, shown by actions characterized by wantonness." *Sims*, 230 F.3d at 21 (citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (quoting *Hudson*, 503 U.S. at 7). In determining whether a defendant acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: "the extent of the injury and the mental state of the defendant[;] . . . the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted).

In *Vosburgh v. Bourassa*, No. 07-cv-101, 2008 WL 3166387 (D.N.H. Aug. 5, 2008), the plaintiff brought an excessive force claim against a corrections officer, alleging that the defendant intentionally and sadistically punched him in his groin during a pat-down. *See id.* at *1. The punch caused slight swelling and discoloration. *See id.* Denying the defendant's motion for summary judgment, the court found that expert testimony was not needed to establish a causal relationship between the defendant punching the plaintiff in the groin, and the pain the plaintiff experienced as a result. *See id.* at *5. The court found that such pain and injuries are within the understanding of the common juror. *See id.*

Similarly, in *Coleman v. Semona*, No. 1:09-cv-734, 2011 WL 1740302 (S.D. Ind. May 5, 2011), the court found that "expert medical testimony on causation is not always required in excessive force cases or delay or denial of medical care cases." *Id.* at *2 (citations omitted); *see*

4

*also Hendrickson v. Cooper*, 589 F.3d 887, 892 (7th Cir. 2009) (excessive force) ("No expert testimony is required to assist jurors in determining the cause of injuries that are within their common experiences or observations"); *Williams v. Liefer*, 491 F.3d 710, 715-16 (7th Cir. 2007) (delay of medical care) (holding that although the plaintiff must offer medical evidence to show that delay in treatment caused harm, it is not always necessary for every type of harm to be supported with expert medical testimony on causation).

As the cases above make clear, depending on the harm alleged, medical testimony is not always necessary to support excessive force and deliberate indifference claims. In the present matter, Plaintiff alleges that, on August 22, 2009, during an altercation with another inmate, Defendants Smith and Raimo "pulled" him from the cell and "slammed [him] to the tier," at which point he was punched and handcuffed. *See* Dkt. No. 1 at ¶¶ 2-3. Once handcuffed, Defendants Smith and Raimo allegedly kicked Plaintiff while he was on the ground, and "hurled racial slurs" at him. *See id.* at ¶ 3. After several minutes, Defendants Smith and Raimo pulled Plaintiff to his feet and slammed him into the gates at the front of the cell. *See id.* at ¶ 4. Defendant Smith punched Plaintiff in his shoulder, arm, and back. *See id.* Defendant Raimo then kneed Plaintiff, punched his right leg, and pushed his head "into the bars." *See id.* at ¶ 5. Defendant Vedder, who was located behind Plaintiff at the time, failed to stop the attack and allegedly hit Plaintiff in the head and back. *See id.* at ¶ 6.

After "several minutes," Plaintiff was escorted to the infirmary. *See id.* at ¶ 7. While at the infirmary, Defendant Oliver interviewed Plaintiff and "failed to adequately service [him]." *See id.* at ¶ 8. Plaintiff alleges that he was not provided with any medication for the swelling and pain. *See id.* Plaintiff requested an "emergency sick call" the next morning, but Defendant Oliver refused his request. *See id.* at ¶ 9. Plaintiff alleges that, as a result of Defendants Raimo, Smith,

5

and Vedder's actions, he experienced "severe pain . . . and swelling" of the leg, knee, and shoulder. Plaintiff also claims that Defendant Oliver's failure to assist with these injuries led to prolonged pain and swelling. *See id.*

As Plaintiff's allegations make clear, expert medical testimony is not necessary for him to establish a causal connection between the pain he allegedly experienced and Defendants' alleged use of force. The injuries of which Plaintiff complains are within the jury's common experiences and observations. *See Hendrickson*, 589 F.3d at 892 (citation omitted).

Based on the foregoing, the Court denies Defendants' motion *in limine* to preclude Plaintiff from offering causation evidence.

**C.     Plaintiff's motion to preclude the introduction of exhibits referencing the previous denials of grievances**

Plaintiff claims that Defendants have indicated that they do not intend to pursue their affirmative defense that Plaintiff failed to exhaust his procedural remedies prior to initiating the present matter. *See* Dkt. No. 80-1 at ¶ 3. Plaintiff further alleges that there are exhibits that both parties intend to introduce that include references to previous denials of his grievances. *See id.* In light of Defendants' representation, Plaintiff asserts that the Court should preclude the introduction of "any evidence indicating a negative determination in a grievance procedure arising out of the facts and circumstances giving rise to this suit." *See id.* at ¶ 2. Plaintiff claims that this evidence is irrelevant and that its probative value is outweighed by the potential confusion and prejudicial effect it will have. *See id.* at ¶ 5.

Defendants have not responded to Plaintiff's motion and Plaintiff has not provided the Court with the exhibits to which he objects. As such, the Court finds that it is premature, at this

time, to rule on this motion. Therefore, Plaintiff's motion to preclude this evidence is denied without prejudice to renewal at trial.

**D.     Plaintiff's motion to preclude Defendants from offering any testimony regarding Plaintiff's prior criminal history**

Plaintiff asserts that Defendants should be precluded from introducing any evidence concerning his criminal record – including his convictions for murder and possession of a firearm – except for the fact of the existence of a felony conviction for purposes of impeachment. *See* Dkt. No. 113-1. Plaintiff argues that the prejudicial value of the introduction of a conviction for an act of violence outweighs the probative value as an impeachment tool. *See id.* at 4 (citations omitted).

Rule 609 of the Federal Rules of Evidence vests broad discretion in the district court to admit or exclude evidence of prior convictions. *See United States v. Pedroza*, 750 F.2d 187, 202 (2d Cir.1984). Rule 609(a) provides as follows:

> (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and (2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment, if it can be readily determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness.

*See* Fed. R. Evid. 609(a).

"The Rule requires district courts to admit the name of a conviction, its date, and the sentence imposed unless the district court determines that the probative value of that evidence 'is

7

substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *United States v. Estrada*, 430 F.3d 606, 621 (2d Cir. 2005) (quotation omitted). In "balancing the probative value against prejudicial effect under [Rule 609], courts examine the following factors: (1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness." *Daniels v. Loizzo*, 986 F. Supp. 245, 250 (S.D.N.Y. 1997) (citing *United States. v. Hayes*, 553 F.2d 820, 828 (2d Cir. 1977)); *see also* 4 Weinstein's Federal Evidence, § 609.05[2] at 609.34 (2010). "Although all of these factors are relevant, '[p]rime among them is [the first factor, *i.e.*,] whether the crime, by its nature, is probative of a lack of veracity." *United States v. Brown*, 606 F. Supp. 2d 306, 312 (E.D.N.Y. 2009) (citing *United States v. Ortiz*, 553 F.2d 782, 784 (2d Cir. 1977)).

As to the first factor, although "Rule 609(a)(1) presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully," *Estrada*, 430 F.3d at 617, "all Rule 609(a)(1) felonies are not equally probative of credibility." *Id.* at 618. As to the second criterion, the "probative value of a conviction decreases as its age increases." 4 Weinstein's Federal Evidence, § 609.05[3][d] at 609-41 (2d ed. 2010). "The third criterion, similarity of the crimes, deals with the similarity of the charged crimes, or the incident at issue in the pending case, to the conviction. The less similar the pending case to the prior conviction, the less prejudicial its admission is." *Stephen v. Hanley*, No. 03-CV-6226, 2009 WL 1471180, *5 (E.D.N.Y. May 21, 2009) (citation omitted). On the other hand, a conviction for a crime that bears a close resemblance to actions alleged in the current case might cause "unfair prejudice to

the party against whom they are offered by suggesting that the party has a propensity to commit such acts." *Lewis v. Velez*, 149 F.R.D. 474, 483 (S.D .N.Y. 1993) (citation omitted).

Considering the factors listed above, the Court agrees with Plaintiff that Defendants should be precluded from introducing evidence concerning the name and nature of his convictions for murder and firearm possession. As the Second Circuit has recognized, felony convictions for crimes of violence frequently have considerably lower probative value since they do not generally arise out of dishonest conduct. *See Estrada*, 430 F.3d at 167-18. Moreover, a review of the New York State Department of Corrections and Community Supervision website reveals that Plaintiff's convictions are at least ten (10) years old. Finally, the fact that Plaintiff was convicted of murder would likely prejudice the jury into believing that Plaintiff exhibits a propensity for violence. The Court is persuaded that the jury is likely to draw the inference from the nature of Plaintiff's convictions that he has the propensity to engage in violent behavior. *See Twitty v. Ashcroft*, No. 3:04cv410, 2010 WL 1677757, *3 (D. Conn. Apr. 23, 2010) (citing cases).[1]

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion *in limine* is **DENIED**; and the Court further

**ORDERS** that Plaintiff's motion *in limine* to preclude the introduction of exhibits referencing the previous denials of grievances (Dkt. No. 80) is **DENIED** without prejudice to renew; and the Court further

---

[1] If Plaintiff opens the door to such evidence being introduced, however, Defendants may attempt to introduce evidence concerning the nature of the convictions.

**ORDERS** that Plaintiff's motion *in limine* to preclude Defendants from offering any testimony regarding Plaintiff's prior criminal history (Dkt. No. 113) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve of copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: October 15, 2012
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge